**AMOCO PRODUCTION COMPANY,**
Appellant (Plaintiff),

v.

**EM NOMINEE PARTNERSHIP COMPA-NY, a/k/a Energy Methods Nominee Partnership Company, a Colorado Partnership, Hallwood G.P., Inc., and E.D.P. Operating, Ltd., Appellees (Defendants).**

**EM Nominee Partnership Company, a/k/a Energy Methods Nominee Partnership Company, a Colorado Partnership; Hallwood G.P., Inc.; and E.D.P. Operating, Ltd., Appellants (Defendants),**

v.

**Amoco Production Company,**
Appellee (Plaintiff).

Nos. 96–321, 96–327.

Supreme Court of Wyoming.

April 14, 2000.

536

Representing Amoco Production Company: Peter A. Bjork of Bjork, Lindley & Danielson, P.C., Denver, Colorado.

Representing Em Nominee Partnership Company, et al.: Thomas J. Kimmell of Zarlengo & Kimmell, LLC, Denver, Colorado; and J. Kent Rutledge and Lou Piccioni of Lathrop & Rutledge, P.C:, Cheyenne, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

The question that we must address here is whether expert testimony articulating the custom and practice in the industry can substitute for the sound of silence to fill a hole in a Unit Agreement and create an obligation to refund overriding royalties. Collateral issues are argued with respect to several theories for recovery of the royalties; a counterclaim for conversion; the effect of the statute of limitations; and the computation of interest. The trial court found that the Unit Agreement was not ambiguous, and it ruled that EM Nominee Partnership Company, a/k/a Energy Methods Nominee Partnership Company, a Colorado Partnership, Hallwood G.P., Inc., and E.D.P. Operating, Ltd. (EM Nominee) had no obligation to repay the royalties to Amoco Production Company (Amoco). Summary Judgment was entered in favor of EM Nominee on all claims asserted by Amoco and also on the claim of EM Nominee to recover royalties from other properties withheld by Amoco in an effort to collect the amount it claimed was due to it. We accept the careful and reasoned analysis by the trial court, and the Order on Motion to Amend Complaint and Motions for Summary Judgment and Judgment entered by the trial court is affirmed in all respects.

In the Brief of Appellant, Amoco Production Company, in Case No. 96–321 the issues are identified as:

A. Whether the District Court erred in granting summary judgment to Appellees (collectively "EM Nominee") on Appellant's ("Amoco") claim for breach of contract?

B. Whether the District Court erred in granting summary judgment to EM Nominee on Amoco's claim for unjust enrichment?

C. Whether the District Court erred in granting summary judgment to EM Nominee on Amoco's claim for conversion, the error including finding that Amoco's claim for conversion was barred by the statute of limitations?

D. Whether the District Court erred in granting EM Nominee summary judgment on its counterclaim for conversion against Amoco?

E. Whether the District Court erred in ruling that the damages recoverable on EM Nominee's counterclaim for conversion were not limited by application of the statute of limitations?

F. Whether the District Court erred in granting EM Nominee a judgment which included pre-judgment interest, when insufficient evidence supporting EM Nominee's interest calculations was submitted to the Court?

These same issues are adopted by reiteration in the Response Brief of Appellees, EM Nominee Partnership Company a/k/a Energy Methods Nominee Partnership Company, a Colorado Partnership, Hallwood G.P., Inc., and E.D.P. Operating, Ltd., in Opposition to Amoco's Appeal. In the Reply Brief of Appellant, Amoco Production Company, these additional statements of issues appear:

A. Summary of Argument.

B. Viewing the provisions of the Unit Agreement and Letter–In–Lieu of Transfer Order in the light most favorable to Amoco, material issues of

---

* Chief Justice at time of oral argument; retired November 2, 1998.

fact exist which make the District Court's entry of summary judgment improper.

C. Amoco's payments to EM Nominee were not "voluntary." Judgment for EM Nominee on Amoco's claim for unjust enrichment must be vacated.

D. Amoco's claim for conversion was filed within four years after the claim accrued and is not barred by the statute of limitations.

E. The District Court erred in granting summary judgment to EM Nominee on its counterclaim for conversion because Amoco had a legal right to set-off proceeds from other properties.

F. The amount of the judgment entered in favor of EM Nominee fails to take into account the bar of the statute of limitations.

In Case No. 96–327, these issues are set forth in the Brief of Appellants, EM Nominee Partnership Company a/k/a Energy Methods Nominee Partnership Company, a Colorado Partnership, Hallwood G.P., Inc., and E.D.P. Operating, Ltd., on Cross Appeal:

A. Whether the District Court erred in granting Amoco summary judgment on EM Nominee's Counterclaim for breach of fiduciary duty?

B. Whether the District Court erred in granting Plaintiff, Amoco Production Company ("Amoco"), summary judgment on EM Nominee's Counterclaim for breach of contract?

In the Brief of Appellee, Amoco Production Company in Case No. 96–327, the issues are stated in this way:

A. The District Court properly entered judgment in Amoco's favor on EM Nominee's Counterclaim for breach of fiduciary duty, as no fiduciary relationship existed between the parties as a matter of law.

B. The District Court properly entered judgment in Amoco's favor on EM Nominee's Counterclaim for breach of contract.

In the Reply Brief of Appellants, EM Nominee Partnership Company a/k/a Energy Methods Nominee Partnership Company, a Colorado Partnership, Hallwood G.P., Inc., and E.D.P. Operating, Ltd., on Cross Appeal in Case No. 96–327, these additional issues are claimed:

A. Summary of Argument.

B. Genuine issues of material fact exist that preclude entry of summary judgment as to defendant's counterclaim for breach of fiduciary duty.

C. Summary judgment as to defendant's counterclaim for breach of contract was improperly granted.[1]

On August 2, 1973, UV Industries, Inc. (UV Industries), a predecessor in interest of EM Nominee, assigned a federal oil and gas lease covering 640 acres in Sweetwater County to Amoco, reserving a 6.25% overriding royalty. Contemporaneously with that assignment, a portion of the 640 acres was unitized and made subject to the Brady (Deep) Unit Agreement. This portion of the assigned leasehold was identified as Tract 11, and it became part of the participating area established for the Nugget "B" Formation within the unit. In order to commit Tract 11 to the Brady (Deep) Unit, Amoco and UV Industries executed a Unit Agreement, which provided in Article 11:

It is the intent of this section that a participating area shall represent the area known or reasonably estimated to be productive in paying quantities; but, regardless of any revision of the participating area, nothing herein contained shall be construed as requiring any retroactive adjustment for production obtained prior to the effective date of the revision of the participating area.

On April 23, 1975, the Bureau of Land Management (BLM) approved the participating area for the Nugget "B" Formation within the Brady (Deep) Unit. On November 28, 1975, the BLM approved a First Revision to this participating area, but Amoco objected to the revision. During a stay of the First

1. In view of our affirmance of the Order on Motion to Amend Complaint and Motions for Summary Judgment and Judgment in all respects, we do not address the issues presented in the cross-appeal on behalf of EM Nominee.

Revision, the operator suspended payment of royalties from the participating area to UV Industries until November of 1976 when the proceeds attributable to the suspension were released, and payment of the royalties was resumed.

EM Nominee acquired the 6.25% overriding royalty interest in the lease owned by UV Industries as of March 1, 1984. On June 14, 1984, Amoco accepted a Letter–in–Lieu of Transfer Order which reflected the transaction between UV Industries and EM Nominee. The acquisition of this royalty interest by EM Nominee specifically was made subject to the Unit Agreement that had been executed between Amoco and UV Industries. Between the dates of March 1, 1985 and November of 1988, Amoco paid EM Nominee royalties on production from the participating area in the amount of $248,049.95.

Earlier in January of 1985, Champlin Petroleum Company (Champlin), the operator of the Brady (Deep) Unit, drilled and completed a well within the unit lands. The well was tested until October 31, 1985, when a month long test flow was concluded. On March 7, 1986, Champlin informed Amoco of its intent to apply for a Third Revision to the Brady (Deep) Unit Nugget "B" Formation participating area because of the poor test results on the well. Champlin also advised Amoco that it intended to request that the revision be made retroactive to March 1, 1985. The revision, if approved, would eliminate Tract 11, which included the land subject to EM Nominee's overriding royalty interest, from the participating area. Apparently, Amoco never advised EM Nominee of the Third Revision sought by Champlin.

Initially, Amoco opposed the revision proposed by Champlin, but on December 29, 1986, Amoco entered into a pooling agreement with other owners of leasehold interests in the participating area in order to preserve its revenue interest in the Nugget "B" Formation participating area. On May 2, 1989, in the absence of any opposition to the revision, the BLM approved the Third Revision, which excluded the land subject to EM Nominee's royalty interest from the participating area. The revision was made retroactive to March 1, 1985.

On May 30, 1991, Amoco requested that EM Nominee refund the royalties paid to it between March 1, 1985 and November of 1988. EM Nominee refused to reimburse Amoco for the $248,049.95 that had been paid pursuant to the Unit Agreement. Between March of 1990 and March of 1993, Amoco withheld $17,864.36 in proceeds from other EM Nominee properties that were not related to the Brady (Deep) Unit, and Amoco purported to set off the retained proceeds against its claim that EM Nominee should refund the royalties attributable to Tract 11 previously paid to it.

On September 28, 1993, Amoco filed this action against EM Nominee alleging breach of contract, unjust enrichment, and conversion. EM Nominee answered Amoco's Complaint on December 27, 1994, and on July 10, 1995, EM Nominee amended its answer and filed a counterclaim alleging conversion, breach of fiduciary duty, and breach of contract on the part of Amoco. Each of the parties filed a motion for summary judgment, and Amoco offered affidavits of expert witnesses to explain the custom and practice in the industry for applying the language of Article 11 of the Unit Agreement. In its decision letter of September 13, 1996, the district court found that the Unit Agreement was not ambiguous. On November 8, 1996, the district court entered summary judgment in favor of EM Nominee as to all claims asserted by Amoco on the premise that EM Nominee had no obligation to repay the royalties at issue. In addition, the district court entered summary judgment in favor of EM Nominee on its counterclaim for conversion, but the court ruled against EM Nominee on its claims for breach of fiduciary duty and breach of contract. Both parties have appealed the Order on Motion to Amend Complaint and Motions for Summary Judgment and Judgment.

■■■■ A summary judgment is appropriate in litigation when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Ahearn v. Anderson–Bishop Partnership*, 946 P.2d 417, 421 (Wyo.1997); *Woodard*

*v. Cook Ford Sales, Inc.,* 927 P.2d 1168, 1169 (Wyo.1996); *Roemer Oil Co. v. Aztec Gas & Oil Corp.,* 886 P.2d 259, 262 (Wyo.1994); *see also,* W.R.C.P. 56(c). In contract litigation, when the terms of the agreement are unambiguous, the interpretation is a question of law, and a summary judgment is appropriate because there is no genuine issue of material fact. *Examination Management Services, Inc. v. Kirschbaum,* 927 P.2d 686, 689 (Wyo. 1996); *Union Pacific Resources Co. v. Texaco, Inc.,* 882 P.2d 212, 218–19 (Wyo.1994). Whether a contract is ambiguous is a question of law for the reviewing court. *Prudential Preferred Properties v. J and J Ventures, Inc.,* 859 P.2d 1267, 1271 (Wyo.1993). We review questions of law *de novo* without affording deference to the decision of the district court. *Hermreck v. United Parcel Service, Inc.,* 938 P.2d 863, 866 (Wyo.1997); *Griess v. Office of the Atty. Gen., Div. of Criminal Investigation,* 932 P.2d 734, 736 (Wyo.1997).

■ According to our established standards for interpretation of contracts, the words used in the contract are afforded the plain meaning that a reasonable person would give to them. *Doctors' Co., v. Insurance Corp. of America,* 864 P.2d 1018, 1023 (Wyo.1993). When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. *Union Pacific Resources Co.,* 882 P.2d at 220; *Prudential Preferred Properties,* 859 P.2d at 1271. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Sinclair Oil Corp. v. Republic Ins. Co.,* 929 P.2d 535, 539 (Wyo.1996); *Prudential Preferred Properties,* 859 P.2d at 1271.

■ We reiterate the language of Article 11 of the Unit Agreement upon which Amoco relies, with appropriate emphasis:

It is the intent of this section that a participating area shall represent the area known or reasonably estimated to be productive in paying quantities; but, regardless of any revision of the participating area, nothing herein contained shall be construed as requiring any retroactive adjustment for production obtained *prior* to the effective date of the revision of the participating area.

Amoco's contention, as presented to this Court, is that it is implicit from this provision that retroactive adjustments for production obtained *after* the effective date of the revision of the participating area are required. It is this position that Amoco endeavored to support by offering the testimony of several expert witnesses. Those witnesses apparently would be willing to testify that the proposition asserted by Amoco is the custom and practice with respect to applying such language in the oil and gas industry.

■ The district court looked at the unambiguous language of Article 11 of the Unit Agreement, and concluded that this language dealt only with an obligation to adjust for production obtained prior to the effective date of any revision of the participating area. The district court concluded that the language did not address and, therefore, did not require the reimbursement of royalty payments that had been made subsequent to the effective date of a revision. We do not rewrite contracts under the guise of interpretation, and so long as there is no ambiguity, we are bound to apply contracts as they have been scrivened. *McMurry Oil Co. v. Deucalion Research, Inc.,* 842 P.2d 584, 588 (Wyo.1992) *(citing Wyoming Machinery Co. v. United States Fidelity and Guaranty Co.,* 614 P.2d 716, 720 (Wyo.1980)); *Kidd v. Kidd,* 832 P.2d 566, 570 (Wyo.1992). In *State v. Pennzoil Co.,* 752 P.2d 975, 981 (Wyo.1988), we said:

Next, the Board invokes a common sense and good faith premise for interpreting the lease. They urge that common sense requires a conclusion that the Board would not enter into a contract which permitted the lessees to receive proceeds in relation to the gas and foreclosed the lessor from any right to a portion of those proceeds. We accept the proposition that we are to interpret the contract in the light of common sense and good faith. *Wolff v. Belco Development Corporation* [Wyo., 736 P.2d 730 (1987) ], supra; *Marathon Oil Company v. Kleppe,* 407 F.Supp. 1301 (D.Wyo.1975), *aff'd* 556 F.2d 982 (10th Cir. 1977). Common sense and good faith do

not demand a conclusion, however, that the Board would never enter into a contract which, in hindsight, is not the best arrangement that could have been made. The Board simply is requesting that this court rewrite the contract to encompass provisions that it would have included after learning of the take-or-pay payments. No rule of law justifies that resolution by this court.

To the same effect is *Rainbow Oil Co. v. Christmann,* 656 P.2d 538, 544 (Wyo.1982).

▆ Nothing in the language of Article 11 of the Unit Agreement addresses the repayment of leasehold royalties previously paid. Its plain language is concerned only with the potential of retroactive adjustment of royalties for production that had occurred prior to the effective date of the revision of the participating area. Amoco's endeavor to invoke the testimony of experts with respect to industry custom and practice in applying this language inverts our rule with respect to extrinsic evidence. Instead of relying upon the extrinsic evidence to resolve an ambiguity, Amoco seeks to invoke the extrinsic evidence to structure an ambiguity. This would amount to this Court writing a new contract for the parties, and we are foreclosed from that endeavor. *Union Pacific Resources Co.,* 882 P.2d at 220; *Prudential Preferred Properties,* 859 P.2d at 1271.

▆ In an effort to bolster its position, Amoco also asserts that certain language in the Letter–in–Lieu of Transfer Order, that EM Nominee executed, constitutes an agreement by EM Nominee to indemnify and reimburse Amoco for the royalty payments. The language upon which Amoco relies reads:

> Buyer [EM Nominee] hereby agrees to indemnify, save and hold you [Amoco] harmless from and against any and all claims, demands, actions, judgments, damages, liabilities, losses, costs, charges, recoveries and other expenses of every nature and character which you may sustain by reason of making payment of proceeds of production as requested and authorized hereby.

Indemnity agreements that exculpate one from the consequences of his own acts are not looked upon with favor by the courts, and are to be strictly construed. *Richardson Associates v. Lincoln–Devore, Inc.,* 806 P.2d 790, 811 (Wyo.1991); *Wyoming Johnson, Inc. v. Stag Industries, Inc.,* 662 P.2d 96, 99 (Wyo.1983). If the indemnitee intends to make the indemnitor responsible for a fault in which the indemnitee shares, that goal must be expressed in clear and unequivocal terms beyond any peradventure of doubt. *Northwinds of Wyoming, Inc. v. Phillips Petroleum Co.,* 779 P.2d 753, 758 (Wyo.1989); *Wyoming Johnson, Inc.,* 662 P.2d at 99. The language upon which Amoco relies, as found by the district court, does not in clear and unequivocal terms, beyond any peradventure of doubt, require EM Nominee to reimburse Amoco for royalties that were paid after the effective date of the revision of the unit. Instead, the indemnity provision upon which Amoco relies obviously is intended to protect Amoco against third party claims resulting from an erroneous payment of royalties to those other than the persons or entities entitled to them. There is no third party indemnification claim before this Court, and this provision is inefficacious for the purpose claimed by Amoco.

▆ In an alternative theory of recovery, Amoco contends that it is entitled to reimbursement of the royalty payments to EM Nominee under a theory of unjust enrichment. Unjust enrichment, or quantum meruit, is an equitable remedy which implies a contract so that one party may recover damages from another. *Adkins v. Lawson,* 892 P.2d 128, 131 (Wyo.1995); *Bowles v. Sunrise Home Center, Inc.,* 847 P.2d 1002, 1004 (Wyo.1993). There are four elements for a claim of unjust enrichment:

(1) Valuable services were rendered, or materials furnished,

(2) to the party to be charged,

(3) which services or materials were accepted, used and enjoyed by the party, and,

(4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or furnishing such materials, expected to be paid by the party to be charged.

Without such payment, the party would be unjustly enriched.

*Coones v. F.D.I.C.,* 894 P.2d 613, 617 (Wyo. 1995); *Landeis v. Nelson,* 808 P.2d 216, 217–18 (Wyo.1991), *Zitterkopf v. Bradbury,* 783 P.2d 1142, 1144 (Wyo.1989).

 There is no dispute over the fact that Amoco made royalty payments to EM Nominee nor the fact that those payments were accepted and used by EM Nominee. Since the Unit Agreement did not require the repayment of royalties after the adjusted effective date, however, the royalty payments were not furnished under circumstances that would reasonably notify EM Nominee of Amoco's expectation to be reimbursed. As a matter of law, Amoco has failed to offer any evidence to establish the fourth element so as to permit it to maintain an action for unjust enrichment.

 Amoco's final theory is that the failure of EM Nominee to repay the royalty proceeds constituted a conversion of Amoco's property. The elements a plaintiff must establish for recovery for an action in conversion are:

(1) He had legal title to the converted property;

(2) there is a right to immediate possession at the time of the conversion;

(3) the defendant exercised dominion over the property in a manner which denied the plaintiff his right to use and enjoy the property;

(4) when a defendant comes into possession lawfully or without fault, plaintiff must show demand and refusal to turn over the property; and

(5) the plaintiff has suffered damage by the loss of the property.

*Ferguson v. Coronado Oil Co.,* 884 P.2d 971, 975 (Wyo.1994); *Young v. Young,* 709 P.2d 1254, 1257 (Wyo.1985). Amoco did not offer evidence to establish its legal title to the royalty proceeds, nor did it demonstrate its right to immediate possession at the time of the alleged conversion. This is true whether we look at the Unit Agreement or the Letter–in–Lieu of Transfer Order. Amoco's claim for conversion fails.

 In any event, Amoco did not file its Complaint within four years of the time the cause of action accrued, and the claim for conversion would be barred by the statute of limitations. The applicable statute of limitations, found in Wyo. Stat. Ann. § 1–3–105(a)(iv)(B) (Lexis 1999), reads:

(a) Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues:

* * *

(iv) Within four (4) years, an action for:

* * *

(B) The recovery of personal property or for taking, detaining or injuring personal property[.]

Wyoming is a discovery state in which the statute of limitations is triggered when a plaintiff knows or has reason to know of the existence of a cause of action. *Murphy v. Housel & Housel,* 955 P.2d 880, 883 (Wyo. 1998); *Nowotny v. L & B Contract Industries, Inc.,* 933 P.2d 452, 457 (Wyo.1997); *see also Duke v. Housen,* 589 P.2d 334, 343 (Wyo.), *cert. denied,* 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979). Amoco knew or had reason to know that EM Nominee had been overpaid royalties by May 2, 1989, when the BLM reduced the size of the unit and made that revision retroactive. Amoco did not file its Complaint until September 28, 1993, and therefore, even if it could support a claim for conversion such a claim would be time barred.

 Amoco also complains of the award of summary judgment to EM Nominee on its counterclaim for conversion. EM Nominee sought recovery from Amoco for proceeds from royalties payable on other leased property that Amoco had seized. Amoco claimed the right to set off these royalties against EM Nominee's alleged obligation. We previously have noted that conversion is defined as any distinct act by dominion wrongfully executed over ones property in denial of his right or inconsistent with it. *Western Nat. Bank of Casper v. Harrison,* 577 P.2d 635, 640 (Wyo.1978), *followed by, Ferguson,* 884 P.2d at 975. Since EM Nominee had no obligation to reimburse

Amoco for the royalty payments at issue, Amoco had no right to set off the proceeds that it seized from the other EM Nominee's properties that were not related to the Brady (Deep) Unit. The district court properly granted EM Nominee a summary judgment on its claim for conversion.

 Amoco asserted as an affirmative defense that EM Nominee had failed to bring its claim for conversion within the four year statute of limitations found in Wyo. Stat. Ann. § 1–3–105(a)(iv)(B). As we have noted previously, Amoco was rightfully in possession of these proceeds, and the claim for conversion required a demand and refusal. As the party asserting the statute of limitations, it was Amoco's responsibility to demonstrate the date of the demand and refusal in order to commence the period for the statute of limitations. Amoco made no such showing. EM Nominee alleged that it became aware that it had a claim for conversion as a result of discovery conducted in this case. Amoco filed its Complaint on September 28, 1993, and EM Nominee's knowledge of its claim for conversion had to be acquired after that date. EM Nominee amended its answer and filed its counterclaim for conversion on July 10, 1995, well within the four year period provided in the statute of limitations.

 Amoco's last concern is the amount of prejudgment interest at the statutory rate of seven percent in the amount of $6,580.65 which the district court awarded EM Nominee on its judgment for conversion. We have held that the allowance of prejudgment interest in a conversion case is not interest per se. Instead, it is an additional amount of damages which the finder of fact may, in its discretion, award to compensate the plaintiff from the time between the origin of the cause of action and the trial. *ANR Production Co. v. Kerr–McGee Corp.*, 893 P.2d 698, 704 (Wyo.1995), *see also In re Johnson's Estate and Guardianship*, 78 Wyo. 173, 320 P.2d 429, 433–34 (1958). In this case, the district court did not abuse its discretion in awarding EM Nominee prejudgment interest as part of its damages for the conversion claim.

The Order on Motion to Amend Complaint and Motions for Summary Judgment and

Judgment entered in the trial court is affirmed in all respects.