2004 WY 80

**CABOT OIL & GAS CORPORATION, a Delaware corporation, Appellant (Defendant),**

v.

**Dorman FOLLOWILL, Emil Hecht, Eva Hecht, Eva Oil and Gas, LLC, C. Dennis Irwin, PDI Trust Dated February 23, 1994, Barton Johnson, Everett Johnson, Larry Mizel, Yosemite Creek Oil and Gas, LLC, Marvin Wolf, the Melvin and Elaine Wolf Foundation, INC., and Norita M. Weigand, Appellees (Plaintiffs).**

No. 02–283.

Supreme Court of Wyoming.

July 8, 2004.

Representing Appellant: Thomas F. Reese, Morris R. Massey, and Drake D. Hill of Brown, Drew & Massey, LLP, Casper, Wyoming. Argument by Messrs. Reese and Massey.

Representing Appellee: Dennis N. Carnes and Carolyn J. Mitchell of Kuhn, Carnes, & Anderson, P.C., Denver, Colorado; Nancy D. Freudenthal and John C. McKinley of Davis & Cannon, Cheyenne, Wyoming. Argument by Mr. Carnes.

Before HILL, C.J., and GOLDEN, LEHMAN, and VOIGT, JJ., and JAMES, D.J.

GOLDEN, Justice.

[¶ 1]   In response to a complaint disputing royalty payments for natural gas sales from federal oil and gas leases, the federal district court for Wyoming certified questions of law concerning the interpretation of Wyoming statutes governing the Wyoming Royalty Payment Act (Act).  The statutes at issue, Wyo. Stat. Ann. § 30-5-301 through § 30-5-305 (LexisNexis 2004), provide that "gathering" costs are "costs of production" and not deductible from royalty payments.  Appellant Cabot Oil & Gas Corporation (Cabot) contends that the transportation costs involved are postproduction costs and properly deductible from Appellee royalty owners' royalty payments.

## CERTIFIED QUESTIONS

[¶ 2]   This Court has agreed to answer the following certified questions:

1.  What is meant by the term "gathering" as that term is employed in Wyo. Stat. Ann. § 30-5-304(a)(vi) in defining "costs of production"?

2.  Do the causes of action for recovery of the one hundred dollar per month penalty imposed under Wyo. Stat. Ann. § 30-5-303(c) for failure to provide complete reporting as required by Wyo. Stat. Ann. § 30-5-305(b) and for improperly deducting "costs of production" as defined in Wyo. Stat. Ann. § 30-5-304(a)(vi) accrue when the statutes are violated or when a plaintiff knows or has reason to know of the existence of the violations?

[¶ 3]   We hold that "gathering" means to collect gas and move it to a point where it can be processed or transported to the user.  All costs associated with that activity are "costs of production" under § 30-5-304(a)(vi) and nondeductible from royalties.  In answer to the second question, we hold that the remedies provided accrue when a royalty owner knows or has reason to know of statutory violations.

## FACTS

[¶ 4]   Appellee· royalty owners (Owners) are the owners of overriding royalty interests

carved out of thirteen federal oil and gas leases who are entitled to payment of overriding royalties with respect to sales of natural gas produced from some ninety-six wells on lands located in three different Wyoming counties. Cabot is a successor in interest to the original lessees and currently responsible for payment of royalties and overriding royalties on gas produced and sold from or allocated to these federal lands. The majority of the gas produced is transported by unrelated third parties from the wells where the gas is produced to delivery points at interconnections with interstate transmission systems where the gas is sold. Mountain Gas, Inc., Williams Field Services Company, or Questar Gas Management Company, third parties who are not affiliated with Cabot, have contracts for transporting the gas. The transporters invoice Cabot for these services. Cabot, then in turn, deducts pro rata shares of its costs for these services in calculating the amounts owed to the respective Owners.

## DISCUSSION

[¶ 5] Under three agreements between Cabot and its transporters, gas is transported off the lease to downstream points of sale, and royalties are calculated on the basis of the sales proceeds less the costs of transportation. Cabot contends that transportation off the lease to a point of sale is not part of the nondeductible costs of production as defined in the Act. Cabot contends that, under the Act, costs described as "in the market pipeline" are deductible transportation costs. Owners contend that Cabot has improperly deducted gathering costs from their share of production in violation of common law and the Act. Wyo. Stat. Ann. § 30–5–304(a)(vi) (LexisNexis 2004) (emphasis added) provides:

> (vi) "Costs of production" means all costs incurred for exploration, development, primary or enhanced recovery and abandonment operations including, but not limited to lease acquisition, drilling and completion, pumping or lifting, recycling, **gathering**, compressing, pressurizing, heater treating, dehydrating, separating, storing or **transporting** the oil to the storage tanks or **the gas into the market pipe-**

> line. "Costs of production" **does not include** the reasonable and actual direct costs associated with **transporting** the oil from the storage tanks to market or **the gas from the point of entry into the market pipeline** or the processing of gas in a processing plant[.]

This Act was amended effective July 1, 1989, to include § 304's definitions. 1989 Wyo. Sess. Laws ch. 255 § 3. Cabot contends that, historically, costs of transportation of gas from the place of production to a processing plant or to a distant point of sale have been shared by royalty owners. The parties' contentions require that we determine whether this historical allocation has been abrogated by the 1989 amendments to the Act.

### Standard of Review

[¶ 6] The questions certified in this case under W.R.A.P. 11 are questions of law, the resolution of which requires interpretation of the applicable statutes. Statutory interpretation is a question of law which we review de novo. *Chevron U.S.A., Inc. v. State,* 918 P.2d 980, 983 (Wyo.1996). We first decide whether the statute is clear or ambiguous. This Court makes that determination as a matter of law. *Id.* A "statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability." *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization,* 813 P.2d 214, 220 (Wyo.1991). A "statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations." *Id.* at 219–20.

[¶ 7] If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute. We begin by making an " 'inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection.' " *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n,* 845 P.2d 1040, 1042 (Wyo.1993) (quoting *Rasmussen v. Baker,* 7 Wyo. 117, 133, 50 P. 819, 823 (1897)). We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia. State Dep't of Revenue and Taxation v. Pacificorp,* 872

P.2d 1163, 1166 (Wyo.1994). If we determine that the statute is ambiguous, we resort to general principles of statutory construction to determine the legislature's intent. *State v. Bannon Energy Corp.*, 999 P.2d 1306, 1309 (Wyo.2000).

## Parties' Contentions

[¶ 8] Owners contend that "gathering" as used in § 30–5–304(a)(vi) means an activity of collecting natural gas or oil from a well and transporting it to (a) in the case of natural gas, the inlet of a processing plant or, if there is no processing plant, the point of entry into the market pipeline or, (b) in the case of oil, the storage tank. Owners assert that a market pipeline, as that term is employed in the statute, is a pipeline that transports gas to (1) a distribution center for delivery to the consumers of the gas, (2) an industrial consumer of the gas, or (3) a gas storage facility. Owners further claim that a comparison of definitions from treatise writers, the natural gas industry, natural gas gathering companies, federal judges, federal agencies, state judges, state legislators, and state oil and gas commissions reveals that gathering comprises two functions: collecting gas and moving it to a point where it can be processed or transported to the user. Because gathering is an activity, Owners contend that Cabot's argument that geography and record title ownership must factor into the examination is incorrect. Owners also reviewed numerous decisions that considered the function of gathering and contend that each has defined gathering as an activity comprising the two functions of collecting and transporting the gas to a point where it can be processed or transported to the user. It is Owners' ultimate contention that the legislature has specifically addressed each activity from the wellhead to the ultimate user and stated precisely which activity is a cost of production and which is not and based on this plain language, Cabot's argument must be rejected. Owners further contend that this interpretation fulfills the legislative intent and purpose which this Court has stated is remedial and intended to stop producers from retaining other people's money for their own use.

[¶ 9] Cabot tells us that those gathering costs which are not deductible are the production function taking place in the locale of the lease or unit which consists of the collection of the gas prior to its introduction into the pipeline systems which transport the gas from the fields downstream to distant points. Transporting the gas from the locale of the production to distant delivery points where the gas is sold is a post-production function, the costs of which are deductible pro rata from royalty payees. Cabot arrives at this conclusion by also reviewing the plain language of the statute and contending that all categories included as costs of production are functions that occur on the lease or unit and the legislature has thus evidenced its intent to limit nondeductible costs to those activities taking place on the lease or unit. Further, Cabot contends, the legislative intent that off lease activities, such as transporting gas away from the fields where produced to processing facilities or to distant markets, are to be considered a postproduction function and deductible from royalty payments.

[¶ 10] We have not previously considered this issue although similar arguments were addressed in *Wold v. Hunt*, 52 F.Supp.2d 1330, 1334 (D.Wyo.1999). There, the court determined that the Act reflected a "clear legislative purpose of simplifying the computation of royalties and providing a mechanism by which the royalty owner is able to determine if royalties are paid correctly." *Id.* at 1336. The court found that the statutory definition of costs of production "excludes all charges between the wellhead and the market pipeline except those specifically excluded from the definition." *Id.* The court held that "costs of production" includes gathering charges and that the market pipeline is the point of delineation for deductibility. *Id.* Cabot contends that *Wold v. Hunt* reached its decision by deciding that all pipelines were gathering lines that the legislature intended to include in nondeductible costs of production, and the decision did not answer the certified question presented here. Cabot claims that the question remains whether, under the rules of statutory construction, the costs of transportating natural gas off the lease are "costs of production" that are not deductible from royalty payments.

### Statutory Interpretation

[¶ 11] The Act is a remedial statute and, as such, is to be liberally construed to achieve its remedial purpose. *Moncrief v. Harvey*, 816 P.2d 97, 105 (Wyo.1991). The Act was enacted in 1982 to stop oil producers from retaining other people's money for their own use. *Independent Producers Marketing Corp. v. Cobb*, 721 P.2d 1106, 1110 (Wyo. 1986). In 1989, the legislature enacted § 30–5–304 as part of the Act to specifically define terms in the Act.[1] 1989 Wyo. Sess. Laws ch. 255 § 1. Under the statute the costs of production cannot be deducted from an overriding royalty or royalty payment. § 30–5–304(a)(v), (vii). The statutory definition of nondeductible costs of production includes cost of transporting the gas into the market pipeline but does not include transportation costs from the point of entry into the market pipeline. § 30–5–304(a)(vi). Properly defining the term "gathering" will distinguish between those transportation costs that are nondeductible production costs and those that are deductible postproduction costs.

[¶ 12] Cabot's contention that the statute limits gathering to those transportation costs that occur on the geographic region of the lease is not supported either by the statutory language or any authority. As Owners point out, this construction would rely on our deciding that all of the activities listed in § 304(a)(vi) could only be accomplished on the lease site, and we have no authority that is accurate. Owners contend that it is not. Instead, our resolution must rely on the precise statutory language demarcating production from postproduction by entry to the market pipeline and the definition of market pipeline must be gleaned from the statutory language. We find that subjecting royalties to deductions based upon Cabot's determination that postproduction costs have begun at an offsite point would inject the arbitrariness that the legislature intended to defeat by enactment of the Act. We agree with *Wold v. Hunt* that the Wyoming legislature has departed from the methodologies employed by other jurisdictions and specifically excluded all charges between the wellhead and the market pipeline except those specifically excluded from the definition. 52 F.Supp.2d at 1336. We hold that "gathering" means to collect gas and move it to a point where it can be processed or transported to the user. All costs associated with that activity are nondeductible under § 30–5–304(a)(vi) and nondeductible from royalties.

### Statutory Violation

[¶ 13] The Act imposes penalties, costs and fees for violations of its provisions. Wyo. Stat. Ann. § 30–5–303 (LexisNexis 2004) provides:

1. (a) As used in this act:

(i) "Lessee" means the person entitled under an oil and gas lease to drill and operate wells, paying the lessor a royalty and retaining the remainder, known as the working interest. The lessee pays all costs of production out of his interest, the lessor's interest being free and clear of all those costs;

(ii) "Lessor" means the mineral owner who has executed a lease and who is entitled to the payment of a royalty on production, free and clear of the costs of production;

(iii) "Operator" means a person engaged in the business of drilling and producing wells for oil and gas;

(iv) "Other nonworking interest" means any interest in an oil and gas lease or well which is not a royalty, overriding royalty or working interest;

(v) "Overriding royalty" means a share of production, free of the costs of production, carved out of the lessee's interest under an oil and gas lease;

(vi) "Costs of production" means all costs incurred for exploration, development, primary or enhanced recovery and abandonment operations including, but not limited to lease acquisition, drilling and completion, pumping or lifting, recycling, gathering, compressing, pressurizing, heater treating, dehydrating, separating, storing or transporting the oil to the storage tanks or the gas into the market pipeline. "Costs of production" does not include the reasonable and actual direct costs associated with transporting the oil from the storage tanks to market or the gas from the point of entry into the market pipeline or the processing of gas in a processing plant;

(vii) "Royalty" means the mineral owner's share of production, free of the costs of production;

(viii) "Working interest" means the interest granted under an oil and gas lease, giving the lessee the right to work on the leased property to search for, develop and produce oil and gas and the obligation to pay all costs of production;

(ix) "This act" means W.S. 30–5–301 through 30–5–305.

(a) Any lessee or operator, purchaser or other party legally responsible for payment who violates the provisions of this article is liable to the person or persons legally entitled to proceeds from production for the unpaid amount of such proceeds, plus interest at the rate of eighteen percent (18%) per annum on the unpaid principal balance from the due date specified in W.S. 30–5–301(a).

(b) The district court for the county in which a well producing oil, gas or related hydrocarbons is located has jurisdiction over all proceedings brought pursuant to this article and the prevailing party in any proceedings brought pursuant to this article shall be entitled to recover all court costs and reasonable attorney's fees.

(c) Any person who fails to provide royalty information as provided in W.S. 30–5–305(b) is liable to the affected royalty, overriding royalty or other nonworking interest owner in the amount of one hundred dollars ($100.00) per month that complete reporting is not provided to the interest owner.

Cabot contends that the royalty owners' remedy provided by this statutory provision is subject to the statute of limitations provided in Wyo. Stat. Ann. § 1–3–105(a)(v)(D) (Lexis-Nexis 2004), which imposes a one year limitation on an action "[u]pon a statute for a penalty or forfeiture" and § 1–3–105(a)(ii)(B), which imposes an eight year limitation on an action "upon a liability created by statute other than a forfeiture or penalty." The Owners claim that the discovery rule applies and the one year statute of limitations begins to run when an accurate report is submitted.

[¶ 14] Wyoming is a discovery state in which the statute of limitations is triggered when a plaintiff knows or has reason to know of the existence of a cause of action. *Amoco Production Co. v. EM Nominee Partnership Co.*, 2 P.3d 534, 542 (Wyo. 2000). The remedial purposes of the Act would be nullified if the discovery rule did not apply. The one year statute of limitations related to the penalty for failure to properly report under the Royalty Payment Act begins to run if, and when, the producer issues a proper report. As Owners noted, failure to apply the discovery rule would encourage producers to omit deductions from royalty statements hoping that it could hide the deduction for a year and avoid paying a proper royalty amount. This result is contrary to the remedial nature of the Act.

### CONCLUSION

[¶ 15] We hold that "gathering" means to collect gas and move it to a point where it can be processed or transported to the user. All costs associated with that activity are "costs of production" under § 30–5–304(a)(vi) and nondeductible from royalties. In answer to the second question, we hold that the remedies provided accrue when a royalty owner knows or has reason to know of statutory violations.