The ESTATE OF Keith D. COLEMAN, Deceased, By and Through its Personal Representative, Janice Coleman, Appellant (Plaintiff),

v.

CASPER CONCRETE COMPANY, a Wyoming Corporation; and Skorcz Electric, Inc., a Wyoming Corporation, Appellees (Defendants).

No. 96–30.

Supreme Court of Wyoming.

May 19, 1997.

Dallas J. Laird, Casper; and Richard R. Jamieson, Casper, for Appellant.

Richard R. Wilking, Casper; and Earl J. Hanson of Hanson, Roybal, Lee & Todd, P.C., Billings, for Appellee Casper Concrete Company.

Rebecca A. Lewis of Lewis & Associates, P.C., Laramie, for Appellee Skorcz Electric, Inc.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN,* and LEHMAN, JJ.

TAYLOR, Chief Justice.

In 1989, the State of Wyoming contracted with appellees to build a highway intersection and install traffic lights. In June of 1993, during a malfunction of those lights, a young man was killed in a collision with a drunk driver at the intersection. Although the State successfully sought shelter in immunity and the drunk driver eventually settled with the decedent's estate, suit survived against appellees on disparate theories of negligence, strict liability and *res ipsa loquitur*. From

_____

* Chief Justice at time of oral argument.

an adverse summary judgment, the decedent's estate prosecutes this appeal. We affirm.

## I. ISSUES

The decedent's mother, Janice Coleman, as personal representative of her son's estate (appellant), states the following issues:

I. Whether the district court properly granted summary judgment in favor of appellees in reliance on *Lynch v. Norton Const., Inc.,* 861 P.2d 1095 (Wyo. 1993)?

II. Is there a genuine issue of material fact regarding the remaining elements of the negligence claim and the strict liability and *res ipsa loquitur* claims?

Appellee, Skorcz Electric, Inc. (Skorcz), takes a more elementary approach to its statement of the issue:

1. Did the district court err in granting summary judgment to Skorcz Electric, Inc.?

Appellee, Casper Concrete Company (Casper Concrete), follows Skorcz's lead in stating the issue:

1. Did the district court err in granting summary judgment to Casper Concrete Company?

## II. FACTS

Casper Concrete, the general contractor with the State of Wyoming for a number of road projects in the Casper, Wyoming area, subcontracted with Skorcz to perform electrical work, including installing the poles and connecting traffic light control systems to the signals at the intersection of Outer Drive and Casper Mountain Road. Skorcz subjected the seven-wire cables activating the signal devices to standard industry tests designed to detect damaged or defective wiring. Skorcz's work started in April of 1989 and was completed in October of that year, at which time Skorcz, along with representatives of the State and the equipment manufacturer, again checked the system for problems before activating it. Fourteen days after the system was put into operation, further inspection, maintenance, and repair be-

came the exclusive responsibility of the State, and Skorcz's contractual responsibilities had been fully discharged.

A maintenance log at the intersection reveals that the State performed at least six thorough inspections, in addition to other maintenance work on the system prior to June of 1993. Nonetheless, late in the evening of June 2, 1993, the signals began flashing yellow for Outer Drive but flashing red and yellow at the same time for traffic southbound on Casper Mountain Road. An employee of the Department of Transportation (DOT) was dispatched to the scene in the early hours of June 3, 1993. After shutting off the malfunctioning signal but leaving signals operating in all four directions, that employee asked for and received permission to wait until daylight to further troubleshoot the problem due to a persistent rain which was rendering further repair efforts dangerous.

The DOT worker returned shortly after daylight on June 3, 1993, prepared to put up stop signs for the traffic on Casper Mountain Road. However, the "flash mode" of the signals had reverted to normal operation and the system monitor showed no problems. In view of those developments, the worker decided not to put up the stop signs. Nevertheless, he was intent upon "troubleshooting" the system until rain again rendered such an exercise hazardous and he received permission to postpone further work.

Shortly before 1:30 a.m. the following morning, appellant's decedent was approaching the intersection, southbound on Casper Mountain Road at forty miles per hour. Another driver, this one intoxicated, approached the same intersection on Outer Drive, traveling eastbound at forty miles per hour. Accounts vary as to whether the signals at the intersection were flashing yellow in all directions, or yellow for east-west traffic, red for northbound traffic but yellow and red, simultaneously, for southbound traffic. There is, however, no dispute that both vehicles reached the intersection virtually simultaneously. The resultant collision was fatal to appellant's decedent, just days short of his seventeenth birthday.

In dawn's early light, the DOT employee who had twice before visited the site in the days preceding the fatal accident once again examined the signal system, this time accompanied by his supervisor. The two located a seven-wire cable leading to the faulty signals which had a flattened or "egg shaped" spot, covered with electrical tape, which was warm to the touch. Further examination showed bare and corroded wiring which probably allowed electricity to arc or jump from one wire to the next, illuminating the signals improperly. Following a splicing of the wires on either side of the egg-shaped defect in the seven-wire cable, the signals again worked properly.

In addition to naming Skorcz and Casper Concrete as defendants, the original complaint filed by the decedent's estate identified the drunken driver of the other vehicle and the State, alleging that the negligence of each defendant contributed to the death of appellant's decedent. The district court found the State to be immune from suit and dismissed it as a defendant. Appellant was permitted to amend the complaint, alleging negligence against the three remaining defendants but adding additional counts predicated upon theories of strict liability and *res ipsa loquitur* against Skorcz and Casper Concrete.

Summary judgment on all counts was granted to Skorcz and Casper Concrete on the same day that the drunken driver of the other vehicle was dismissed from the case on stipulation with appellant. This appeal timely followed.

## III. STANDARD OF REVIEW

■ Summary judgment is considered a drastic remedy because it operates to deprive a litigant of the right to trial. As such, it should only be granted with caution and restraint. *Kobielusz v. Wilson,* 701 P.2d 559, 560 (Wyo.1985). This is particularly true in negligence actions. *O'Donnell v. City of Casper,* 696 P.2d 1278, 1280 (Wyo.1985).

■ Appellate scrutiny of summary judgments necessitates a *de novo* review of the entire record, affording the opposing party the benefit of all favorable inferences fairly to be drawn from that record. *Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.,* 907 P.2d 1293, 1297 (Wyo.1995). Thereafter, summary judgment shall not be affirmed unless no material fact remains in dispute and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c); *Lincoln v. Wackenhut Corp.,* 867 P.2d 701, 702 (Wyo. 1994). Materiality is a function of a fact's capacity to establish or refute any essential element of a claim or defense thereto. *Lyden v. Winer,* 878 P.2d 516, 518 (Wyo.1994).

When the party moving for summary judgment has established a prima facie case, the burden of production shifts to the opposing party who then is obliged to marshal admissible evidence, as opposed to general or conclusory allegations, establishing continuing viability of an issue of material fact. *Hanna v. Cloud 9, Inc.,* 889 P.2d 529, 534 (Wyo.1995). Such evidence must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation. *Verschoor,* 907 P.2d at 1297.

## IV. DISCUSSION

### A. NEGLIGENCE CLAIMS

Summary judgment for the appellees was predicated on the district court's inability to discern any meaningful way to distinguish this case from that of *Lynch v. Norton Const., Inc.,* 861 P.2d 1095 (Wyo.1993). We, too, are perplexed by appellant's continued insistence that "*Lynch* is clearly distinguishable from the case at bar[,]" and agree with the district court that the holding in *Lynch* is clearly dispositive, at least with respect to the allegations of negligence.

In *Lynch,* the plaintiff's employer hired a contractor to build a sidewalk. As a consequence of that contractor's alleged negligence, water would collect in certain locations on the sidewalk and turn to ice. Aware of the problem, the plaintiff's employer took no corrective action nor was the contractor notified. *Id.* at 1096–97. When the plaintiff sustained debilitating injuries as a result of a fall on the icy sidewalk, this court upheld summary judgment in favor of the contrac-

tor. Expressly declining to shield the contractor based upon the accepted work doctrine, we held:

> [A] contractor owes a duty to complete his work with skill and care and in a workmanlike manner, and that duty extends to third persons both before and after the owner has accepted the contractor's work.

*Id.* at 1100. Nonetheless, the contractor was exonerated because it could not reasonably foresee that the owner, when confronted with a dangerous defect in the contractor's work, would neither inform the contractor nor initiate independent corrective action to alleviate the danger. *Id.*

■ In the instant case, the State was not only notified of the dangerous signal defect two days before the fatality, but had a worker on the scene fully prepared to turn off the signals and put up stop signs on Casper Mountain Road in order to alleviate the dangerous condition. Furthermore, the State did not notify and never has notified Casper Concrete or Skorcz of the signal failure. Assuming, *arguendo*, that admissible evidence had been produced indicating that the negligence of the appellees engendered the signal malfunction, the State's failure to repair the dangerous condition or request the same of the appellees constituted an effective intervening cause. *See Century Ready–Mix Co. v. Campbell County School Dist.*, 816 P.2d 795, 802 (Wyo.1991).

■ Normally a question for the finder of fact, proximate cause will cease to be an issue when reasonable minds could not differ about the existence of an intervening cause which was not reasonably foreseeable to the defendant. *Lynch*, 861 P.2d at 1099. The existence of such an intervening cause discharges the defendant's liability for his negligence, if any, and entitles such a defendant to summary judgment on the issue. *Id.*

Skorcz and Casper Concrete owed duties of reasonable care to foreseeable users of the intersection they constructed. Had the appellees' negligence been established with respect to the discharge of those duties, our holding would remain that the failure of the DOT to alleviate the danger thus created or notify Skorcz and/or Casper Concrete of the immediate need to rectify that danger was an intervening cause relieving Skorcz and Casper Concrete of any liability for the death of appellant's decedent. *Id.* at 1099–1100.

## B. STRICT LIABILITY

The parties agree that Wyoming has adopted the five elements necessary to a cause of action for strict liability as set forth in Restatement (Second) of Torts § 402A (1965), and reiterated in *Ogle v. Caterpillar Tractor Co.*, 716 P.2d 334, 344 (Wyo.1986):

> (1) That the sellers were engaged in the business of selling the product that caused the harm;
>
> (2) that the product was defective when sold;
>
> (3) that the product was unreasonably dangerous to the user or consumer;
>
> (4) that the product was intended to and did reach the consumer without substantial change in the condition in which it was sold; and
>
> (5) that the product caused physical harm to the plaintiff/consumer.

■ Indulging appellant's dubious assertion that Skorcz and Casper Concrete were in the business of selling seven-wire cable, the case for strict liability would remain stymied by a dearth of anything more than conclusory allegations concerning the origins of defect. Having failed to produce any evidence that the product was defective when "sold," appellant has revealed an inability to establish the second element of a cause for strict liability, leaving summary judgment the appropriate means of dealing with that claim.

## C. RES IPSA LOQUITUR

Wyoming has, with some modification, accepted the doctrine of *res ipsa loquitur* as articulated by Justice Van Devanter in *San Juan Light & Transit Co. v. Requena*, 224 U.S. 89, 98–99, 32 S.Ct. 399, 401, 56 L.Ed. 680 (1912):

> "[W]hen a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the

ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care."

*Goedert v. Newcastle Equipment Co., Inc.,* 802 P.2d 157, 159 (Wyo.1990). In *Stanolind Oil & Gas Co. v. Bunce,* 51 Wyo. 1, 39, 62 P.2d 1297, 1309 (1936), Justice Blume is generally credited with qualifying Justice Van Devanter's definition by warning that possession may not be fully nine points of the law when it comes to the issue of "exclusive control." *See Goedert,* 802 P.2d at 159–60. The "exclusive control" requirement of *res ipsa loquitur* is now considered more a function of superior knowledge and ability to explain the occurrence, as opposed to actual physical control at the time of injury. *See Goedert,* 802 P.2d at 160 and *Rafferty v. Northern Utilities Co.,* 73 Wyo. 287, 306–07, 278 P.2d 605, 612 (1955).

Appellant's *res ipsa loquitur* claim is alternative pleading in the purest sense of the term. It is exclusive to her negligence claim because "[t]he doctrine of res ipsa loquitur is predicated upon plaintiff's inability to specify the act of negligence which caused his injury[.]" *Hall v. Cody Gas Co.,* 477 P.2d 585, 586 (Wyo.1970). Moreover, when extensive maintenance or repair has occurred, the *res ipsa loquitur* claim is equally inimical to a strict liability claim because there has been a substantial change in the condition of the product and the entity maintaining or repairing that product assumes "exclusive control" by acquiring "superior means of explaining the [injurious] occurrence[.]" *Id.*

In this case, it is evident that "exclusive control" of the signal lights at Outer Drive and Casper Mountain Road had long since passed from Skorcz and Casper Concrete. Skorcz and Casper Concrete were never notified of the problem, let alone summoned to the scene. It was the State which had assumed full responsibility for locating and correcting the problem with the malfunctioning signals. If there is a cause of action based in the doctrine of *res ipsa loquitur,* it does not lie against Skorcz or Casper Concrete.

## V.  CONCLUSION

Appellant's failure to muster competent and admissible evidence from which reasonable minds might conclude that Skorcz or Casper Concrete were negligent in a manner which led to the traffic light malfunction at Outer Drive and Casper Mountain Road leaves this court no choice but to affirm the dismissal of appellees from this case by summary judgment.