**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**February 13, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

_____

TIM OTTEN,

    Plaintiff - Appellant,

v.

BNSF RAILWAY COMPANY; UNION
PACIFIC RAILROAD COMPANY,

    Defendants - Appellees.

No. 22-8025
(D.C. No. 2:20-CV-00103-ABJ)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **KELLY**, and **EID**, Circuit Judges.
_____

Thermo Fluids, Inc. dispatched Tim Otten to retrieve oil from a railyard in

Wyoming. After finding the oil barrel empty, Mr. Otten, driving a tanker truck, sought to

exit the railyard. As Mr. Otten approached a track crossing, so too did a Burlington

Northern Santa Fe ("BNSF") train. Mr. Otten attempted to cross the tracks without first

stopping, looking, or listening for a train. A collision ensued.

Mr. Otten filed suit, alleging negligence against BNSF and Union Pacific, an

owner of the railyard. Mr. Otten contended poor design of the rail crossing prevented him

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

from squaring his truck to the crossing to look for a train. BNSF and Union Pacific moved for summary judgment, arguing Mr. Otten violated 49 C.F.R. § 392.10(a)'s requirement that a truck stop, look, and listen before crossing a rail track and that this violation was (1) negligence per se and (2) the proximate cause of the accident.

The district court granted summary judgment in accord with BNSF's and Union Pacific's arguments. Mr. Otten appeals. Procedurally, Mr. Otten argues the district court abused its discretion by relying on arguments raised for the first time by BNSF and Union Pacific in their reply brief on summary judgment. As to the substance of the district court's reasoning, Mr. Otten contends § 392.10(a) did not apply to him, it was impossible for him to comply with § 392.10(a) based on the configuration of the rail crossing, and a Wyoming court would not treat any violation of § 392.10(a) as negligence per se or the only proximate cause of the collision.

For five reasons, we affirm the district court's grant of summary judgment. First, BNSF's and Union Pacific's reply brief on summary judgment permissibly expanded upon opening brief arguments and addressed arguments advanced by Mr. Otten in his response brief. Second, Mr. Otten waived his argument that 49 C.F.R. § 392.10(a) did not apply. Third, although the rail crossing was not ideally designed, the crossing configuration did not prevent Mr. Otten from complying with the regulation. Fourth, the district court did not abuse its discretion when it concluded a violation of § 392.10(a) would amount to negligence per se under Wyoming law. Fifth, Mr. Otten's failure to stop, look, and listen was an intervening and unforeseeable cause of the accident, relieving BNSF and Union Pacific of any liability.

2

## I.    BACKGROUND

### A.    *Factual History*

In 2017, Thermo Fluids, Inc. employed Mr. Otten as a truck driver. At that time, Thermo Fluids, Inc. held a contract with BNSF to remove oil from railyards in Wyoming. On the date of the accident, Thermo Fluids, Inc. dispatched Mr. Otten to remove oil from a BNSF railyard in Wright, Wyoming.

To access the barrel where BNSF stored the oil, a vehicle needed to enter the railyard from Hilight Road, cross three main-line tracks, and make a left turn to the north onto a dirt road that ran parallel to main-line track 1 ("M1"). From the crossing, it was just under a quarter mile to the oil barrel. Of additional note, a pair of curved BNSF "Wye" tracks ran just to the east of the dirt road that provided access to the oil barrel. An expert report offered by Mr. Otten identified the distance between the M1 track and the closest Wye track as twenty-six feet.

Prior to the date of the accident, Mr. Otten visited the Wright, Wyoming, railyard on only one prior occasion. On that first occasion, BNSF provided Mr. Otten an escort to lead him through the railyard, to the oil barrel, and back out of the railyard. On the day of the accident, BNSF did not provide Mr. Otten an escort to guide him through the railyard. Without an escort, Mr. Otten followed the previous route to the oil barrel, entering the yard from the west off of Hilight Road, crossing the three main tracks, making a left onto the dirt road, and traveling northward to the oil barrel. Upon arriving at the oil barrel, Mr. Otten discovered it was empty. He

called BNSF and was informed BNSF had not yet loaded the barrel and that he would need to return another day to retrieve the oil.

Mr. Otten turned his truck around, looking to the north to see if a train was coming before retracing his steps to exit the railyard. Mr. Otten drove south on the dirt road for twenty to thirty seconds before reaching the crossing point for the main-line tracks. During those twenty to thirty seconds, Mr. Otten did not look or listen for any oncoming trains.[1] As Mr. Otten approached the crossing, a BNSF train traveling southbound on the M1 track also approached the crossing. The BNSF train was traveling well under the speed limit for the section of track and blew its horn several times as it approached the crossing.[2] Mr. Otten did not come to a stop or markedly slow his truck as he reached the crossing point. Rather, Mr. Otten turned directly onto the crossing, driving into the path of the BNSF train. The front left corner of the train struck the front right side of Mr. Otten's truck. In his operative complaint, Mr. Otten alleges that, as a result of the collision, he suffers from "debilitating, progressive and permanent bodily injuries to his head, body and limbs, including facial laceration, traumatic brain injury, spinal, shoulder, hip, leg, lung, [and] ribs" and that his injuries may necessitate a permanent caretaker. App. at 68.

---

[1] Mr. Otten had the windows up and the radio on in his truck, and there was a strong wind such that he could not hear an approaching train.

[2] The speed limit for the section of the track in the railyard was fifty miles per hour. The BNSF train was traveling between thirty-seven and thirty-eight miles per hour.

### B.    *Procedural History*

Mr. Otten filed a complaint against BNSF in state court, raising a claim of negligence.[3] BNSF removed the case to federal court. Mr. Otten filed an amended complaint, raising a claim of negligence against BNSF and a claim of negligence against Union Pacific. BNSF and Union Pacific filed answers to the amended complaint, and the case proceeded to discovery.

BNSF and Union Pacific filed a joint motion for summary judgment. They argued that Mr. Otten violated 49 C.F.R. § 392.10(a) by not stopping, looking, and listening before crossing the track and that said violation was negligent per se.[4] BNSF and Union Pacific further argued Mr. Otten's negligence per se was the proximate cause of the accident. In support of these arguments, BNSF and Union Pacific cited a mix of Wyoming case law regarding negligence, proximate cause, and the impact of regulatory violations, as well as non-Wyoming cases involving vehicle/train collisions.

---

[3] The state court complaint also identified Mr. Otten's wife, Noella Otten, as a plaintiff and identified Western Railroad Properties, Incorporated as a defendant. The parties stipulated to the dismissal of Ms. Otten's claims. As part of an amended complaint, Mr. Otten replaced Western Railroad Properties, Incorporated with Union Pacific.

[4] In pertinent part, 49 C.F.R. § 392.10(a) states,

> the driver of a commercial motor vehicle . . . shall not cross a railroad track . . . unless he/she first: Stops the commercial motor vehicle within 50 feet of, and not closer than 15 feet to, the tracks; thereafter listens and looks in each direction . . . for an approaching train; and ascertains that no train is approaching.

In opposing summary judgment, Mr. Otten scantly cited 49 C.F.R. § 392.10, identifying it only in response to a few statements of undisputed facts by BNSF and Union Pacific. Mr. Otten never suggested § 392.10(a) did not apply or that he had not violated the regulation. Rather, Mr. Otten raised several arguments for why any violation of § 392.10(a) did not compel granting summary judgment in BNSF's and Union Pacific's favor. First, Mr. Otten contended that, under Wyoming law, when a court finds that a plaintiff advancing a negligence claim violated a regulation, it has discretion to conclude the violation is evidence of negligence rather than negligence per se and that Wyoming courts favor submitting the issue of negligence to a jury. Second, Mr. Otten argued any regulatory violation he committed was one of two proximate causes of the accident—the design of the rail crossing being the other—such that the issue of comparative negligence should be submitted to a jury. Third, Mr. Otten contended that if he violated § 392.10(a), the violation should be excused because, given the spacing between and configuration of the M1 and Wye tracks, it was impossible for him to comply with the regulation and square up his truck to the track to look for an approaching train.

In reply, BNSF and Union Pacific argued a Wyoming court would find this regulatory violation negligence per se because 49 C.F.R. § 392.10(a) provided a "positive and definite standard of care." *Id*. at 212 (quoting *Pinnacle Bank v. Villa*, 100 P.3d 1287, 1291 (Wyo. 2004)). Next, BNSF and Union Pacific argued the temporal proximity between Mr. Otten's failure to stop, look, and listen, and the collision, made his violation of § 392.10(a) the proximate cause of the accident. Finally, BNSF and Union Pacific

6

countered Mr. Otten's impossibility argument by noting Mr. Otten had the burden on the issue, his evidence of impossibility was speculative and indefinite, and there was evidence Mr. Otten could have complied with the regulation.

The district court granted the motion for summary judgment. The district court concluded Mr. Otten violated 49 C.F.R. § 392.10(a) by not stopping, looking, and listening before attempting to cross the M1 track. The district court further concluded § 392.10(a) set forth a "positive and definite standard of care" and a Wyoming court would apply negligence per se to Mr. Otten's violation of the regulation rather than treating it as mere evidence of negligence. From this, the district court held that Mr. Otten's violation of the regulation was an intervening proximate cause, was not foreseeable, and thus discharged any liability on the part of BNSF or Union Pacific. Finally, the district court rejected Mr. Otten's impossibility argument on the basis that nothing prevented him from at least stopping and listening, which would have alerted him to the approaching train.

On appeal, Mr. Otten raises five arguments, one procedural and four substantive, for reversing the district court's grant of summary judgment. On the procedural front, Mr. Otten contends the district court abused its discretion because its grant of summary judgment rests on several arguments and cases raised for the first time by BNSF and Union Pacific in their reply brief. On the substantive front, Mr. Otten argues (1) he never admitted 49 C.F.R. § 392.10(a), applied and BNSF and Union Pacific failed to advance evidence proving such; (2) the district court should have excused any regulatory violation because it was impossible for Mr. Otten to fully comply with § 392.10(a) given the

7

geometry of the rail crossing; (3) the district court abused its discretion by concluding a Wyoming court would treat any violation of § 392.10(a) as negligence per se rather than evidence of negligence; and (4) even if the regulatory violation were treated as negligence per se, the rail crossing design contributed to the accident such that a jury should have been permitted to assess comparative negligence.

## II.    DISCUSSION

We start by addressing Mr. Otten's procedural challenge, concluding the district court did not abuse its discretion in considering arguments and case law discussed by BNSF and Union Pacific in their reply brief on summary judgment. Then we address Mr. Otten's four substantive arguments and determine none of them warrants reversal of the district court's grant of summary judgment.

### A.    *Procedural Challenge: Arguments Relied Upon by District Court*

Mr. Otten contends BNSF and Union Pacific raised arguments for the first time in their reply brief to the district court about (1) his regulatory violation qualifying as negligence per se; and (2) his negligence being the proximate, intervening cause of the accident, relieving them of liability. Mr. Otten further asserts the district court relied upon these two arguments in granting summary judgment, as evident by its citations to *Pinnacle Bank* and *Estate of Coleman v. Casper Concrete Co.*, 939 P.2d 233 (Wyo. 1997). BNSF and Union Pacific counter that they raised the issues identified by Mr. Otten in their opening brief to the district court and that their citation to additional authority in their reply brief addressed arguments raised by Mr. Otten in his response brief.

We begin by stating the law governing reply brief argumentation on summary judgment. Then we consider whether BNSF and Union Pacific waited until their reply brief to raise either of the two arguments identified by Mr. Otten.

### 1.    Law Governing Reply Brief Argumentation

"Federal Rule of Civil Procedure 56 implicitly requires the district court to allow the nonmoving party an opportunity to respond before summary judgment is entered against it." *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1163 (10th Cir. 1998).[5] "Thus, when a moving party advances in a reply new reasons and evidence in support of its motion for summary judgment, the nonmoving party should be granted an opportunity to respond." *Id.* at 1164; *cf.* D. Wyo. Local Civ. Rule 7.1(b)(2)(C) ("Reply briefs shall not be used to . . . address issues not previously raised in the motion or response."). A moving party, however, does not introduce new arguments for summary judgment in its reply merely by responding to arguments in the nonmoving party's brief and "point[ing] out the defects" in those arguments. *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005); *see also In re Gold Res. Sec. Litig.*, 776 F.3d 1103, 1119 (10th Cir. 2015) ("While it is true that we generally do not review issues raised for the first time in a reply brief, we make an exception when the new issue argued in the reply brief is offered in

---

[5] Although Federal Rule of Civil Procedure 56 has been modified since *Beaird v. Seagate Technology, Inc.*, 145 F.3d 1159 (10th Cir. 1998), such that the precise language relied upon in *Beaird* is no longer in Rule 56, the Rule still includes language generally supporting the implication identified by *Beaird*. *Cf.* Fed. R. Civ. P. 56(b)(2) (permitting party to object to alleged fact); 56(f) (permitting district court to grant summary judgment on own motion but only "[a]fter giving notice and a reasonable time to respond").

response to an argument raised in the plaintiff's brief." (internal quotation marks and brackets omitted)).

We review whether a district court violated the implicit guarantee of Rule 56 by relying on an argument raised by the moving party for the first time in its reply brief for an abuse of discretion. *Beaird*, 145 F.3d at 1164. "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless we have a definite and firm conviction that the lower court has made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (internal quotation marks and brackets omitted). A district court relying on new evidentiary materials or new arguments presented in a reply brief without permitting the nonmoving party an opportunity to respond amounts to an abuse of discretion. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003).

**2.      Argument that Violation of 49 C.F.R. § 392.10 Qualified as Negligence Per Se**

First, Mr. Otten argues BNSF and Union Pacific failed to timely argue his violation of 49 C.F.R. § 392.10(a) amounted to negligence per se. In addressing whether Mr. Otten was negligent per se, the district court specifically identified BNSF and Union Pacific as raising the issue on page thirteen of their opening brief. On that page of their brief, BNSF and Union Pacific (1) quoted § 392.10(a), (2) asserted Mr. Otten "failed to slow down or stop prior to going over the crossing as required by th[e] regulation," (3) asserted Mr. Otten failed to "look and listen prior to going over the crossing," and (4) contended Mr. Otten "exhibited negligence." App. at 109. BNSF and Union Pacific then discussed *Distad v. Cubin*, 633 P.2d 167 (Wyo. 1981), a Wyoming case that adopted

10

a provision of the Restatement (Second) of Torts that advanced four elements for determining when a regulatory violation qualifies as negligence per se. BNSF and Union Pacific proceeded to discuss why § 392.10(a) and Mr. Otten's conduct satisfied these four elements. Thus, it is apparent BNSF and Union Pacific argued, in their opening brief on summary judgment, that a Wyoming court would treat a violation of § 392.10(a) as negligence per se.

Mr. Otten contends BNSF and Union Pacific presented an incomplete argument on the issue because they did not inform the district court that, even if all four elements from *Distad* and the Restatement (Second) of Torts were met, a Wyoming court would not exercise its discretion to apply negligence per se unless the regulation also imposed a "positive and definite standard of care." Appellant's Br. at 16 (quoting *Pinnacle Bank*, 100 P.3d at 1291). It is true that, under Wyoming law, a trial court has such discretion even where the moving party presents evidence showing the regulatory violation satisfies all four elements. *Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195, 1198 (Wyo. 1987). But nothing required BNSF and Union Pacific, in their opening brief on summary judgment, to identify and then attempt to defeat arguments Mr. Otten might raise for why a violation of § 392.10(a) was not negligence per se. Rather, once Mr. Otten contended application of negligence per se was discretionary, BNSF and Union Pacific were free to amplify their argument in their reply by contending a Wyoming court would exercise such discretion where a regulation stated a "positive and definite standard of care." App. at 212; *see Green*, 420 F.3d at 1196–97; *see also In re Gold Res. Sec. Litig.*, 776 F.3d at 1119. Furthermore, Mr. Otten raised the issue of a court's discretion to find evidence of

11

negligence rather than negligence per se in his response brief. Therefore, we conclude the district court did not contravene the implied purpose of Federal Rule of Civil Procedure 56 or abuse its discretion by considering the issue of whether Mr. Otten's violation of § 392.10(a) qualified as negligence per se under *Distad* and the "positive and definite standard of care" threshold.

**3.      Argument that Mr. Otten's Negligence was the Proximate, Intervening Cause**

The district court also concluded Mr. Otten's violation of 49 C.F.R. § 392.10(a) was a proximate and intervening cause of the accident, was not foreseeable, and therefore discharged BNSF and Union Pacific of any liability for the accident. In addressing the issue, the district court specifically identified BNSF and Union Pacific as raising the argument on pages fourteen and fifteen of their opening brief. There, BNSF and Union Pacific contended that Mr. Otten's violation of § 392.10(a) was "the proximate cause of any injury" given the "temporality between the violation of 49 C.F.R. § 392.10[(a)] and the accident itself" and that the violation was "the sole cause of the collision, representing a superseding or intervening cause, and cutting off any claims of negligence against the Defendants." App. at 110–11. Thus, we conclude BNSF and Union Pacific did raise this issue in their opening brief on summary judgment, and the district court did not abuse its discretion by reaching the issue.[6]

---

[6] In so concluding, we acknowledge BNSF's and Union Pacific's briefing of this issue was on the cursory side and it was not until their reply brief that they identified a Wyoming case for the proposition that an "intervening cause which was not reasonably foreseeable," could relieve them of liability and permit for summary judgment. App. at 213 (quoting *Est. of Coleman v. Casper Concrete Co.*, 939 P.2d 233, 237 (Wyo. 1997)). However, imperfect briefing does not equate to inadequate

### B.    Substantive Challenges

Mr. Otten raises four substantive challenges to the district court's grant of summary judgment, one of which involves the interpretation of federal law while the other three advance issues governed by state law. We start by stating the standard of review applicable to appeals from grants of summary judgment. Then we address Mr. Otten's argument involving federal law. Finally, we address Mr. Otten's three arguments governed by state law.

### 1.    Standard of Review

We review the district court's rulings on summary judgment de novo, applying the same standard as the district court. *See Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105 (10th Cir. 2016). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). On appeal, we "examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073,

---

briefing. And Mr. Otten, based on his response to summary judgment, certainly understood the nature of BNSF's and Union Pacific's argument. *See id.* at 163–65 (arguing that any violation of § 392.10(a) was *a* proximate cause rather than *the only* proximate cause of the collision such that the case should be submitted to a jury for a comparative negligence analysis). Thus, the concern implicitly protected against by Federal Rule of Civil Procedure 56—that a non-moving party is deprived the opportunity to address an issue central to the district court's ruling—is not in play in this case.

1077 (10th Cir. 2011). "In so doing, we 'need not defer to factual findings rendered by the district court.'" *Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 947 (10th Cir. 2018) (quoting *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006)). Finally, this court "can affirm on any ground supported by the record, so long as the appellant has had a fair opportunity to address that ground." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1108 (10th Cir. 2009).

2.    **Federal Law Argument: Applicability of 49 C.F.R. § 392.10(a) and Waiver**

Mr. Otten contends the district court erred in concluding 49 C.F.R. § 392.10(a) applied. Specifically, Mr. Otten argues BNSF and Union Pacific did not demonstrate the oil BNSF tasked him with removing from the railyard was a "hazardous material" for purposes of § 392.10(a)(4) or that any other provision in § 392.10(a)(1)-(a)(6) triggered applicability of the regulation. In advancing this argument, Mr. Otten contends he "was not called upon to admit or deny" that the regulation applied and did not so admit, as evident by his repeated use of "'alleged violations' of the regulations" in his response to summary judgment. Appellant's Br. at 19 (quoting App. at 147, 158, 163–64, 166). In response, BNSF and Union Pacific argue that Mr. Otten waived this issue by not raising it in the district court and not presenting it through the lens of plain error in his opening brief on appeal. We agree with BNSF's and Union Pacific's waiver argument and, therefore, do not reach the issue of whether § 392.10(a) applied to Mr. Otten.

"If a claimant fails to present an issue to the district court, the issue is forfeited unless compelling reasons dictate that the forfeiture be excused." *Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1224 n.9 (10th Cir. 2016) (quotation marks omitted).

Further, where a litigant fails to raise an issue in district court, the issue is subject to plain error review and the litigant's "failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011). Finally, a litigant seeking this court's review of a forfeited issue must present his plain error argument in his opening brief, not his reply brief; otherwise the issue is waived. *See Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1273 (10th Cir. 2020) ("Where counsel fails to raise a theory in the district court out of neglect . . . we consider it forfeited and we review forfeited theories for plain error. In order to avoid a waiver on appeal, a party is required to identify plain error as the standard of review *in their opening brief* and to provide a defense of that standard's application." (emphasis added) (citations omitted)).

In their brief in support of summary judgment, BNSF and Union Pacific cited 49 C.F.R. § 392.10 nineteen times and quoted the provision. *See* App. at 101–18. In so doing, BNSF and Union Pacific stated, in multiple places, that Mr. Otten "violated" § 392.10(a). *Id.* at 101, 106, 110. And BNSF and Union Pacific cited case law involving violations of § 392.10(a) for the proposition that a violation of the regulation amounted to negligence per se and thus compelled a grant of summary judgment. *Id.* at 113–14 (citing *Dietz v. Atchinson, Topeka & Santa Fe Ry.*, 823 P.2d 810, 816 (Kan. Ct. App. 1991); *Gasich v. Chesapeake & Ohio R.R. Co.*, 453 N.E.2d 371, 376 (Ind. Ct. App. 1983)). Thus, although Mr. Otten attempts to fault BNSF and Union Pacific for not specifically alleging in a statement of fact that § 392.10(a) applied to him and that he had violated the

provision, it is entirely clear from the summary judgment brief of BNSF and Union Pacific that they contended § 392.10(a) applied to Mr. Otten and that a violation of it was essential to their motion.

In his response to the summary judgment motion, although Mr. Otten never conceded 49 C.F.R. § 392.10(a) applied or that he violated the provision, he also never argued the provision did not apply. Rather, he remained silent on the matter, hardly citing § 392.10, and presenting several arguments for why any violation of the regulation did not require the district court to grant summary judgment in favor of BNSF and Union Pacific. Accordingly, we conclude Mr. Otten failed to contest the applicability of § 392.10(a) before the district court.

As a result of his failure to present the argument to the district court, Mr. Otten needed to present his appellate argument about the inapplicability of 49 C.F.R. § 392.10(a) through the lens of plain error. However, Mr. Otten's opening brief makes no mention of plain error. Instead, Mr. Otten did not raise plain error review until his reply brief. But, by then, it was too late, as Mr. Otten had already waived appellate review of whether § 392.10(a) was applicable. *See Platt*, 960 F.3d at 1273. Accordingly, we proceed under the assumption that § 392.10(a) applied and that Mr. Otten violated the regulation.

3.     **State Law Arguments**

Mr. Otten raises three arguments under Wyoming law for why his violation of 49 C.F.R. § 392.10(a) did not warrant summary judgment against him: (1) it was impossible for him to comply with § 392.10(a); (2) a Wyoming court would have treated the

violation as evidence of negligence rather than negligence per se; and (3) it was not the only proximate cause of the accident, such that a jury should have performed a comparative negligence analysis. Before addressing each of these issues in turn, we briefly discuss how federal courts apply state law in actions based in diversity jurisdiction.

      *a.*       *Federal court application of state law*

Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The Rules of Decision Act, 28 U.S.C. § 1652, prohibits federal courts from "generating substantive law in diversity actions." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 438 (2010) (Ginsburg, J., dissenting). Instead, when faced with an issue of state substantive law, a federal court "has a duty to apply state law as announced by the state's highest court" that otherwise would have jurisdiction over the claim at issue. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1230 (10th Cir. 2000). If the state's highest court has not directly addressed the issue, a federal court "must endeavor to predict how that high court would rule." *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007). This process of determining how the highest court of a state would rule is sometimes referred to as making an "*Erie*-guess." *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005).

In this case, neither Mr. Otten nor BNSF and Union Pacific identifies a Wyoming Supreme Court case applying 49 C.F.R. § 392.10(a). Thus, although the

parties identify Wyoming Supreme Court cases involving the impossibility of compliance with a regulation, negligence per se, and proximate and intervening causes, we must ultimately make an *Erie*-guess as to how a Wyoming court would address those concepts in the context of a violation of § 392.10(a). A federal court tasked with making an *Erie*-guess should start its analysis by considering relevant rulings by courts of the state. *Stickley*, 505 F.3d at 1077. A federal court may also look to "appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007) (internal quotation marks and citations omitted). In conducting an *Erie*-guess analysis, federal courts should be "generally reticent to expand state law without clear guidance from [the state's] highest court." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1295 (10th Cir. 2017); s*ee also id.* (stating that it is not a federal court's place to "expand . . . state law beyond the bounds set by the [highest court of the state]").

   b.    *Impossibility of compliance with 49 C.F.R. § 392.10(a)*

The pertinent provision of 49 C.F.R. § 392.10 reads:

Except as provided in paragraph (b) of this section, the driver of a commercial motor vehicle specified in paragraphs (a)(1) through (6) of this section shall not cross a railroad track or tracks at grade *unless he/she first: Stops the commercial motor vehicle within 50 feet of, and not closer than 15 feet to, the tracks*; thereafter *listens and looks in each direction along the tracks for an approaching train*; and *ascertains that no train is approaching.* When it is safe to do so, the driver may drive the commercial motor vehicle across the tracks in a gear that permits the

18

commercial motor vehicle to complete the crossing without a change of gears. The driver must not shift gears while crossing the tracks.

49 C.F.R. § 392.10(a) (emphasis added). It is undisputed that Mr. Otten did not stop his truck, listen for a train, or look in both directions before attempting to cross the M1 track. Mr. Otten, however, argues any violation of the regulation should be excused because it was impossible for him to comply with the regulation. More specifically, Mr. Otten contends that given the configuration of the tracks and that only twenty-six feet separated the M1 track from the Wye track, it was not possible for him to comply with the regulation because he could not "square[] up" his truck and stop it at least fifteen feet from the M1 track without crossing into, or fouling, the Wye track. Appellant's Br. at 48.

While Wyoming law recognizes that a violation of a regulation may be excused, it does so in limited circumstances. *Distad*, 633 P.2d at 175–76. Specifically, *Distad* adopted Restatement (Second) of Torts § 288A, which excuses a regulatory violation in five specific circumstances:

(a) the violation is reasonable because of the actor's incapacity;
(b) he neither knows nor should know of the occasion for compliance;
(c) *he is unable after reasonable diligence or care to comply*;
(d) he is confronted by an emergency not due to his own misconduct;
(e) compliance would involve a greater risk of harm to the actor or to others.

*Id.* (quoting Restatement (Second) of Torts § 288A(2)) (emphasis added). Mr. Otten's argument falls under the third circumstance. However, for two reasons, Mr. Otten is unable to satisfy this circumstance.

First, Mr. Otten misreads the regulation. While Mr. Otten contends the track geometry prevented him from squaring up his truck to the track, nothing in 49 C.F.R.

19

§ 392.10(a) required Mr. Otten to place his truck at an angle perpendicular to the track. Rather, it required him to stop his truck "not closer than 15 feet to[] the tracks" and "listen[] and look[] in each direction along the tracks for an approaching train" to determine that "no train [was] approaching" before crossing the tracks. 49 C.F.R. § 392.10(a). Thus, Mr. Otten could have complied with the regulation if he had brought his truck to a stop at an angle of less than ninety degrees to the M1 track, looked to his right and left, and listened for a train before attempting to cross the track. And Mr. Otten's supervisor testified that, without performing a three-point turn or encroaching on the opposing Wye track, one could bring a truck to a stop at a sixty-degree angle to the track—a position from which a driver could look up and down the M1 track. App. at 182–83. Thus, even if Mr. Otten could not square up with the track, this does not show he was "unable" to comply with the regulation.

Second, even if Mr. Otten had advanced evidence demonstrating he was "unable" to comply with the regulation, Wyoming law requires more for excusal of a regulatory violation. Specifically, inability to comply with a regulation is excusable under Wyoming law only after the violator exercises "reasonable diligence or care to comply." *Distad*, 633 P.2d at 76 (quoting Restatement (Second) of Torts § 288A(2)(c)). Here, as demonstrated by the video of the crash, Mr. Otten made no meaningful attempt to exercise care when crossing the track. He did not stop at an angle to the track and look up and down the track, as sight lines might have permitted. He did not lower a window and listen for a train. He did not even slow down and make a meaningful effort to look in his side view mirror before turning onto the track. And, given the very close proximity of the

20

train to the crossing when Mr. Otten attempted to cross and that the train was blowing its horn, any one of these exercises in reasonable diligence and care would have alerted Mr. Otten to the train's presence. As a result, even if it had been impossible for Mr. Otten to comply with 49 C.F.R. § 392.10(a), his violation is not excusable under Wyoming law.

        c.        *Negligence per se versus evidence of negligence*

Next, Mr. Otten argues the district court "abused its discretion" by concluding his violation of 49 C.F.R. § 392.10(a) was negligence per se rather than evidence of negligence.[7] Appellant's Br. at 1, 13, 22. Although we acknowledge that Wyoming disfavors negligence per se, we cannot say the district court abused its discretion given the basic and definite standard announced by § 392.10(a).

Under Wyoming law, "[t]he thrust of the negligence per se rule is that a legislative or administrative rule fixes a standard for all members of the community which does not require a specific interpretation by the jury, and thus certainty is promoted." *Short*, 731 P.2d at 1198. Therefore, a court may rely upon a legislative enactment or an

---

[7] Mr. Otten argues that Wyoming's abuse of discretion standard, rather than the de novo standard federal appellate courts apply to a grant of summary judgment, controls this issue. Without passing on this potential issue, we apply the abuse of discretion standard under which Mr. Otten has argued his case. *See BLB Aviation S.C., LLC v. Jet Linx Aviation, LLC*, 748 F.3d 829, 835 (8th Cir. 2014) ("Because both parties cite state law for the standard of review, we look to state law for the standard of review."); *see also Access Telecomms. v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998) ("In their briefs, both parties argue based on the assumption that we review de novo the issue of whether the doctrine of primary jurisdiction was properly applied by the District Court. Without deciding the standard-of-review question, which is best left to be resolved in a case in which it is contested, we accept the parties' invitation to review the . . . issue de novo (footnote omitted)).

administrative regulation to establish a standard of care. *Distad*, 633 P.2d at 172.

However, in considering whether a regulation may serve as the basis for negligence per

se, a court must be cognizant that "it is seldom that [a regulation] provides specifically a

standard of conduct which, if violated shall entail civil liability in tort." *Id.*

To help a trial court determine whether a regulatory violation is negligence per

se rather than evidence of negligence, the Wyoming Supreme Court has adopted the

approach of the Restatement (Second) of Torts and directs a trial court to engage in a

three-step process:

> (1) the standard defined by legislation or administrative rule should only
> be adopted when the four criteria of § 286, Restatement 2d, are met;
> (2) the excused violation of the legislative enactment or administrative
> rule is not negligence (a non-exclusive list of excused violations is
> encompassed in § 288A, Restatement 2d); and (3) even if the court finds
> that the criteria of § 286 are met, it is not required to adopt the
> legislative enactment as the standard of conduct because of the
> permissive language of the Restatement 2d.

*Short*, 731 P.2d at 1198–99. We have already concluded Mr. Otten's regulatory

violation is not excusable for purposes of the second step of the process, so we focus

our analysis in this section on the first and third steps.

Regarding the first step, under the Restatement (Second) of Torts, a regulation

establishes a "standard of conduct of a reasonable man" if a court concludes the

regulation is designed:

> (a) to protect a class of persons which includes the one whose interest is
>     invaded, and
> (b) to protect the particular interest which is invaded, and
> (c) to protect that interest against the kind of harm which has resulted,
>     and

22

> (d) to protect that interest against the particular hazard from which the harm results.

*Distad*, 633 P.2d at 175 (quoting Restatement (Second) of Torts § 286). Mr. Otten does not seriously contend that these four elements are not satisfied, nor could he. The stop, look, and listen regulation advanced by 49 C.F.R. § 392.10(a) is designed to protect truck operators and railroads from train/truck collisions by requiring truck operators to take precautions before crossing a train track. Here, Mr. Otten did not stop, look, and listen, and the harm sought to be avoided by § 392.10(a)—a collision—ensued. Accordingly, we turn to the third step in the process for determining when a regulatory violation may give rise to negligence per se.

On the third step, although the Wyoming Supreme Court has expressed reluctance to rely on regulatory violations to apply negligence per se, it has allowed the trial court the discretion to apply the doctrine when appropriate. To be sure, the Wyoming Supreme Court has recognized systemic "benefits" to treating a regulatory violation as mere evidence of negligence and submitting the matter to a jury, rather than concluding the violation is negligence per se. *Frost v. Allred*, 148 P.3d 17, 21 (Wyo. 2006). And BNSF and Union Pacific have not identified, and we have not found, a single case where a Wyoming court has applied negligence per se, much less a case where the Wyoming Supreme Court held that a trial court did not abuse its discretion by applying negligence per se. While this lack of authority causes us to carefully consider whether to uphold the application of negligence per se, we are also cognizant that the Wyoming Supreme Court has not foreclosed application of the doctrine. *See Belnap*, 844 F.3d at 1295 (stating

federal courts should be "generally reticent to expand state law without clear guidance from [Wyoming's] highest court").

The Wyoming Supreme Court has adopted the Restatement, which permits for negligence per se. In *Distad*, the Wyoming Supreme Court quoted the following language from the Restatement:

> (1) The unexcused violation of a legislative enactment or an administrative regulation which is adopted by the court as defining the standard of conduct of a reasonable man, is negligence in itself.
> (2) The unexcused violation of an enactment or regulation which is not so adopted may be relevant evidence bearing on the issue of negligent conduct.

633 P.2d at 176 (quoting Restatement (Second) of Torts § 288B). The commentary to § 288B of the Restatement expresses a similar sentiment, permitting negligence per se but cautioning against its use:

> More frequently than in the case of statutes or ordinances, the requirements of administrative regulations are not adopted by the court as defining a definite standard of conduct in negligence actions, but are accepted as affording relevant evidence. The courts have tended to look, more often than in the case of a statute, to the nature of the regulation, the circumstances of the case, and particularly to the character and importance of the administrative body which has issued the regulation. Thus a rule of the Interstate Commerce Commission may be adopted as defining a definite standard, a departure from which is negligence in itself, where an order of a city fire department commission would at most be accepted as relevant evidence.

*Id.* (quoting Restatement (Second) of Torts § 288B cmt. d).

From its reading of the Restatement, the Wyoming Supreme Court has concluded that a trial court "may adopt" a standard of conduct from a regulation and apply negligence per se but that "application of negligence per se is not always

appropriate." *Id.* at 176–77 (citing *McLinn v. Kodiak Elec. Assoc., Inc.*, 546 P.2d

1305 (Alaska 1976), and Restatement (Second) of Torts § 288B cmt. d). Wyoming

cases have identified at least five situations where negligence per se should not be

applied to the violation of a regulation: (1) the regulation, while still legally valid, is

inconsistent with modern practices, *id.* at 178; (2) the regulation is "overbroad and

inflexible," *id.*; (3) the regulation is "obscure, oblique, or irrational," such that

members of the public would not be aware of the regulation, *Short*, 731 P.2d at 1199;

(4) the violation of the regulation was "insubstantial" and not "unreasonably

dangerous," *Pullman v. Outzen*, 924 P.2d 416, 418 (Wyo. 1996); and (5) the facts of

the specific case "represent a conglomeration of circumstances" such that a jury

would have to make multiple findings to assess the applicability of the regulation,

*Short*, 731 P.2d at 1199; *Distad*, 633 P.2d at 179; *see also Pinnacle Bank*, 100 P.3d at

1291 ("[W]hen a conglomeration of circumstances are relied on in order to find the

statutory or regulatory violation, use of the negligence per se doctrine is not

desirable."). Mr. Otten focuses his arguments on the fifth of these situations, arguing

the configuration and geometry of the rail crossing and Wye track make this an

inappropriate case for negligence per se.[8]

---

[8] For the sake of completeness, we concluded the first four situations where negligence per se is improper do not apply because (1) it is common and current practice for commercial vehicles to stop, look, and listen before crossing railroad tracks; (2) the regulation is specific rather than overbroad; (3) the regulation is well-known to the public and to members of the trucking community, as evident by the training Mr. Otten received regarding the regulation; and (4) Mr. Otten completely disregarded the regulation, creating a significant danger to materialize.

Regarding the fifth situation, the Wyoming Supreme Court has concluded that a regulation must announce a "positive and definite standard of care" for a court to exercise its discretion and apply negligence per se:

> if a positive and definite standard of care has been established by legislative enactment (administrative regulation) whereby a jury may determine whether there has been a violation thereof by finding a single issue of fact, a violation is negligence per se; but where the jury must determine the negligence or lack of negligence of a party charged with the violation of a rule of conduct fixed by legislative enactment from a consideration and evaluation of multiple facts and circumstances by the process of applying, as the standard of care, the conduct of a reasonably prudent person, negligence per se is not involved.

*Distad*, 633 P.2d at 179 (quoting *Eisenhuth v. Moneyhon*, 119 N.E.2d 440, 444 (Ohio 1954)). Here, the district court did not abuse its discretion by concluding 49 C.F.R. § 392.10(a) sets just such a standard. The regulation required Mr. Otten to take the affirmative actions of stopping, looking, and listening before crossing the M1 track. It established the rule in clear and definite terms. And a jury would have an easy task if asked to determine whether Mr. Otten stopped, looked, and listened before crossing the M1 track. Simply put, as he admits and can be seen from watching the video of the collision, he did not. Finally, although the design of the track crossing may not have been ideal, Mr. Otten had every ability to stop at an angle to the track and look up and down the M1 line before crossing. Accordingly, while we recognize that Wyoming courts are cautious about applying negligence per se, we conclude the district court did not abuse its discretion by applying it in this case. This leads us to the final question, whether Mr. Otten's negligence per se in violating § 392.10(a) relieves BNSF and Union Pacific of any liability.

26

       *d.*       *Proximate and intervening cause and comparative negligence*

Mr. Otten argues that, even if his violation of 49 C.F.R. § 392.10(a) was negligence per se, it was one of two proximate causes of the accident, the design of the rail crossing being the other. From this, Mr. Otten contends the district court, rather than granting summary judgment, should have permitted a jury to assess his negligence compared to the negligence of BNSF and Union Pacific in designing the crossing. In response, BNSF and Union Pacific contend Mr. Otten's violation of § 392.10(a) was an intervening and unforeseeable cause that relieves them of any liability for the collision.

Wyoming has adopted the traditional definition of proximate cause, in that "[p]roximate cause means that the accident or injury must be the natural and probable consequence of the act of negligence." *McClellan v. Tottenhoff*, 666 P.2d 408, 414 (Wyo. 1983). "In determining what constitutes proximate cause, the same principles apply whether the negligence is a violation of a statutory duty or a nonstatutory duty." *Id.* Wyoming also recognizes the concept that the "acts of negligence of two or more people . . . , although not working in concert, [can] combine to produce a single injury." *Nat. Gas Processing Co. v. Hull*, 886 P.2d 1181, 1186 (Wyo. 1994). As a result, "[m]ore than one proximate cause can exist for an accident or injury" because "[e]ach concurrent cause that contributes directly to the accident or injury is a 'proximate cause.'" *Id.* Thus, "[w]here injury results from two separate and distinct acts of negligence by different persons operating and concurring simultaneously and concurrently, both are the proximate cause." *Id.* (quoting *Hester v. Coliseum Motor Co.*, 285 P. 781, 783 (Wyo. 1930)).

Applying this to a situation where both the plaintiff and the defendant are negligent, the basics of comparative negligence are governed by statute. Wyo. Stat. Ann. § 1-1-109(b). Under the statute, a plaintiff who bears some fault for his injury may recover proportional damages so long as his fault "is not more than fifty percent (50%) of the total fault of all actors." *Id*. Furthermore, under Wyoming law, comparative negligence is not the only limitation on a plaintiff's ability to recover where his negligence contributes to his injury. Specifically, where the plaintiff's negligence is an "intervening cause" it may "discharge[] the defendant's liability for [its] negligence . . . and entitle[s] such a defendant to summary judgment on the issue." *Est. of Coleman*, 939 P.2d at 237. An intervening cause that discharges liability "is one which occurs subsequent to the defendant's negligent act or omission" and is "unforeseeable." *Stephenson v. Pac. Power & Light Co.*, 779 P.2d 1169, 1178 (Wyo. 1989). Conversely, an intervening cause is "reasonably foreseeable" where "it is a probable consequence of the defendant's wrongful act or is a normal response to the stimulus of the situation created thereby," and such an intervening cause will not automatically relieve the defendant of liability because a comparative negligence assessment is necessary in such situations. *Id.* at 1179 (quoting *Buckley v. Bell*, 703 P.2d 1089, 1092 (Wyo. 1985)).

For two reasons, application of this body of law supports the district court's grant of summary judgment. First, Mr. Otten's violation of 49 C.F.R. § 392.10(a) qualifies as an intervening and unforeseeable cause. The violation was intervening because it occurred seconds before the collision, long after BNSF and/or Union

28

Pacific designed and oversaw construction of the rail crossing. And Mr. Otten's complete disregard of § 392.10(a) was not foreseeable, for motorists, particularly truck drivers at a rail crossing without a signal, are expected to make some effort to stop, look, and listen for a train. Thus, Mr. Otten's violation of § 392.10(a) relieved BNSF and Union Pacific of any liability for the accident. Second, even if we were to conclude Mr. Otten's violation of § 392.10(a) was foreseeable and there were multiple proximate causes for the collision, we alternatively conclude that no reasonable jury could determine the design of the crossing was an equal or greater contributor to the accident than Mr. Otten's failure to stop, look, and listen. Accordingly, summary judgement was also appropriate under Wyoming's comparative negligence statute. *Cf. Foote v. Simek*, 139 P.3d 455, 464 (Wyo. 2006) (permitting summary judgment on issues of proximate cause where "the evidence is such that reasonable minds could not disagree" (quoting *Turcq v. Shanahan*, 950 P.2d 47, 52 (Wyo. 1997))).

## III.    CONCLUSION

Concluding that the district court did not abuse its discretion in considering BNSF's and Union Pacific's reply-brief arguments, that Mr. Otten waived his challenge to the applicability of 49 C.F.R. § 392.10(a), that the district court did not abuse its discretion in concluding his violation of § 392.10(a) was negligence per se, and that the violation of § 392.10(a) was an intervening and unforeseeable cause of the collision, we

AFFIRM the grant of summary judgment.

Entered for the Court


Carolyn B. McHugh
Circuit Judge